UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


WILLIAM LAWRENSON

     Applicant,

v.                                    Case No. 8:15-cv-2078-T-23TGW

SECRETARY, Department of Corrections,

     Respondent.

_____/

## O R D E R

William Lawrenson applies for the writ of habeas corpus under 28 U.S.C.

§ 2254 (Doc. 1) and challenges the validity of his state convictions for battery and

sexual battery on a person less than twelve years of age, for which convictions

Lawrenson serves life imprisonment.  Numerous exhibits ("Respondent's Exhibit

__") support the response.  (Doc. 8)  The respondent admits the application's

timeliness.  (Doc. 8, p. 3)

## FACTS[1]

The victim's parents were neighbors of Lawrenson and his wife while both

couples lived in the United Kingdom.  When the victim and her family moved to

Polk County, Florida, they remained friends with the Lawrensons.  The

Lawrensons visited the victim and her family in the United States on several

---

[1] This factual summary derives from Lawrenson's brief on direct appeal. (Respondent's Exhibit 9)

occasions. During one visit, Lawrenson and the victim — then eleven years old — stayed at the victim's home while her parents and Lawrenson's wife went to dinner. While alone with the victim, Lawrenson inserted his finger into the victim's vagina. During a later visit with the victim's family, Lawrenson fondled and licked the victim's breasts. On another occasion Lawrenson put his hand inside the victim's underwear and touched her vagina. On yet another occasion, when the victim was twelve years old, Lawrenson put his hand under the victim's swimsuit and grabbed her breasts. The victim's parents reported the allegations to the police, who arranged a controlled telephone call between the victim and Lawrenson while Lawrenson was in the United Kingdom. During the call, Lawrenson admitted to sexually abusing the victim. Lawrenson later visited the victim's family in Polk County. Lawrenson was taken to the police station. In a recorded interview, he admitted touching the victim's breasts and demonstrated how he inserted his finger into the victim's vagina. Lawrenson was arrested and charged with one count of sexual battery on a person less than twelve (count one) and two counts of lewd molestation (counts two and three).

A jury convicted Lawrenson of both sexual battery on a person less than twelve and the lesser-included offense of battery on count two. The jury acquitted Lawrenson of the second charge of lewd molestation (count three). Immediately after receipt of the verdict, the judge sentenced Lawrenson to a mandatory life sentence for the sexual battery conviction and to time served for the battery conviction.

**STANDARD OF REVIEW**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs Lawrenson's application. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209,

1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which

creates a highly deferential standard for federal court review of a state court

adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to,
>> or involved an unreasonable application of,
>> clearly established Federal law, as determined
>> by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a writ
> of habeas corpus with respect to claims adjudicated on the merits in
> state court. Under § 2254(d)(1), the writ may issue only if one of the
> following two conditions is satisfied — the state-court adjudication
> resulted in a decision that (1) "was contrary to . . . clearly
> established Federal Law, as determined by the Supreme Court of
> the United States" or (2) "involved an unreasonable application
> of . . . clearly established Federal law, as determined by the
> Supreme Court of the United States." Under the "contrary to"

clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established

Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the

unexplained decision adopted the same reasoning." "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ."

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Lawrenson's convictions and sentences. (Respondent's Exhibit 11) The state appellate court affirmed the denial of Lawrenson's Rule 3.850 motion for post-conviction relief. (Respondent's Exhibits 17 and 23) The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181–82, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim

> on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Lawrenson bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Lawrenson's post-conviction claims warrants deference in this action. (Final Orders Denying Motion for Post-Conviction Relief, Respondent's Exhibits 13 and 21)

## INEFFECTIVE ASSISTANCE OF COUNSEL

Lawrenson claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of

counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Lawrenson must demonstrate that counsel's alleged error prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691§92. To meet this burden, Lawrenson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Lawrenson cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting

*Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's

investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267

(11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate
> particular facts or a certain line of defense." *Chandler*, 218 F.3d at
> 1317. "[C]ounsel has a duty to make reasonable investigations or
> make a reasonable decision that makes particular investigations
> unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066
> (emphasis added). "[C]ounsel need not always investigate before
> pursuing or not pursuing a line of defense. Investigation (even a
> nonexhaustive, preliminary investigation) is not required for
> counsel reasonably to decline to investigate a line of defense
> thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the
> reasonableness of an attorney's investigation . . . a court must
> consider not only the quantum of evidence already known to
> counsel, but also whether the known evidence would lead a
> reasonable attorney to investigate further." *Wiggins*, 539 U.S. at
> 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty

to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Lawrenson must prove that the state court's decision

was "(1) . . . contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States or

(2) . . . based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." Sustaining a claim of ineffective assistance

of counsel is very difficult because "[t]he standards created by *Strickland* and

§ 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is

'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (An

applicant must overcome this "'doubly deferential' standard of *Strickland* and [the]

AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

In summarily denying Lawrenson's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibits 13 and 21)  Because the state court rejected the claims based on *Strickland*, Lawrenson cannot meet the "contrary to" test in Section 2254(d)(1). Lawrenson instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).  The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

**Ground One**

In ground one Lawrenson raises three claims for relief: (1) the trial judge improperly intervened and improperly interrupted counsel during cross-examination of the victim, (2) trial counsel rendered ineffective assistance by not "properly" arguing against the trial judge's interruption, and (3) trial counsel rendered ineffective assistance by not properly cross-examining or impeaching the victim. The respondent opposes claims 1 and 2 as unexhausted and procedurally barred because Lawrenson failed to raise claim 1 in his direct appeal and failed to raise claim 2 in his Rule 3.850 motion for post-conviction relief.

<u>Claims 1 and 2</u>

Lawrenson failed to raise claims 1 and 2 in the state court, rendering both claims unexhausted. An applicant must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971). *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the

appropriate jurisdiction of the federal rights which allegedly were violated."). Also, an applicant must present to the federal court the same claim presented to the state court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. at 366.

As *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), explains, an applicant must alert the state court that he is raising a federal claim and not just a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).

Lawrenson's failure to present to the state court either claim 1 or claim 2 deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. *See also Anderson v. Harless*, 459 U.S. 4, 5 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before

the state courts or that a somewhat similar state law claim was made."); *Preston*, 785 F.3d at 460 (noting that "simply mentioning a phrase common to both state and federal law, like 'sufficiency of the evidence,' cannot constitute fairly presenting a federal claim to the state courts"). Consequently, claims 1 and 2 are unexhausted. State procedural rules preclude Lawrenson from returning to state court to present his federal claims in either a second direct appeal or a second state Rule 3.850 motion. Lawrenson's failure to properly exhaust his federal claims in the state court results in a procedural default.

"If the [applicant] has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, an applicant "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, an applicant must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to her actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982). In other words, an applicant must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, an applicant may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495 96 (1986). A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental miscarriage of justice" exception, Lawrenson must show constitutional error coupled with "new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Lawrenson fails to demonstrate cause for the default of both his federal trial court error claim and his ineffective assistance of counsel claim because he fails to show that some "external factor" prevented his raising the federal claims on either direct appeal or state collateral review.[2] *Wright*, 169 F.3d at 703. Lawrenson likewise fails to establish prejudice because he does not show that the alleged errors infected the entire trial with constitutional error. *Frady*, 456 U.S. at 170. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Lawrenson

---

[2] Although afforded the opportunity, Lawrenson filed no reply and consequently, does not oppose the Respondent's assertion of procedural default.

satisfies neither exception to procedural default, both claim 1 and claim 2 of ground one are procedurally barred from federal review.

Claim 3

Lawrenson claims that his trial counsel rendered ineffective assistance by not "properly" cross-examining or impeaching the victim at trial. Lawrenson fails in the federal application to cite any fact or record citation to support this claim. To the extent that he asserts the same allegations presented to the state court in his Rule 3.850 motion, Lawrenson cannot obtain relief. The state post-conviction court summarily denied this claim in Lawrenson's Rule 3.850 motion as follows (Respondent's Exhibit 13, pp. 2–3) (court's record citations omitted):

> In claim 1, Defendant alleges that trial counsel was ineffective for failing to impeach the victim. Defendant cites to several examples as to how trial counsel should have questioned the victim on cross-examination. The Court finds that these examples do not actually constitute impeachment. In subclaim [a], Defendant argues that counsel should have asked the specifics of how the Defendant managed to insert his finger into her vagina. The victim never testified that he had to go into her pajamas and she never testified that there was a struggle. If the question had been asked, there is no indication that the victim could not explain further. Such information would not have helped the Defendant's case and is not considered impeachment.

> In subclaim[ b], Defendant argues that trial counsel should have questioned the victim as to why she changed the offense date. It was acknowledged during the trial that the victim was all over the place when it came to the dates certain things happened. The jury heard the discrepancies in the dates. Pointing out the differences in the victim's testimony could be done during closing arguments.

> In subclaim [c], Defendant argues that counsel should have asked the victim why she knew the family was at the Ming Court restaurant but why she could not remember what she was wearing during the incident on the couch when Defendant

inserted his finger into the child's vagina. The child testified that she was pretty sure she was wearing pajamas and underwear.

In subclaims [d] and [e], Defendant argues that trial counsel should have asked the victim how it was that the Defendant managed to touch her breasts if she was laying face down on the sofa and if she was wrapped up in a blanket. This claim is similar to subclaim [a] and should be denied for the same reasons.

In subclaim [f], Defendant writes that the victim should have been questioned as to who got out of the pool first during that particular incident. At trial, the victim, the mother, and the father all testified that the victim got out of the pool first. Andre Rimmer, the father, testified that he saw Defendant get out of the pool with an erection. It would not be proper to ask the victim why her parents did not react to the Defendant getting out of the pool with an erection. Such would have been a question to ask the father. It would also not be proper to ask the victim if she really thinks the jury will believe that the Defendant got out of the pool with an erection.

In subclaim [g], Defendant writes that counsel should have asked the victim why she would show the Defendant pornography and how it got on her computer. Defendant also writes that an expert should have been called to testify that the pornography originated from an account created by a family member. The testimony at trial was that the victim asked the Defendant to get rid of pornographic pop-ups. She did not want her parents to think she was looking at pornography. The only testimony concerning Defendant and pornography was that he clicked on the pop-ups while the victim was present. It was not alleged that the Defendant actually created an account on a pornographic site. Therefore, a computer expert would not have been necessary.

In subclaim [h], Defendant writes that counsel should have asked the victim if she really thought that the jury would think Defendant would use the phrase "eat you out?" Such is not a proper question for the victim.

In subclaim [i], Defendant argues that trial counsel should have obtained a sleepwalking expert to show that the victim should have remembered what happened after she was pulled into bed with Defendant. Even if one could find an expert who would testify accordingly, the victim testified that she could not remember. An expert opining otherwise would not likely change the victim's testimony. An expert could not testify as to what

happened when the victim was brought into bed with the
Defendant. The Court also finds that it was never implied that the
Defendant had sex with the victim that night.

In subclaim [j], Defendant wanted trial counsel to ask the victim
why the Defendant would pull her into bed with his wife there
when the Defendant ran away from the pornography on the
computer when his wife entered the room. Such is not a proper
question for the victim.

In subclaim [k], Defendant wanted trial counsel to refer to the
victim as a game player. Such also is not proper.

Based on the above, claim 1 is DENIED.

Counsel's decision to cross-examine and the manner of the cross–examination
are strategic decisions entitled to deference. *Dorsey v. Chapman*, 262 F.3d 1181 (11th
Cir. 2001), *cert. denied*, 535 U.S. 1000 (2002); *Fugate v. Head*, 261 F.3d 1206, 1219 (11th
Cir. 2001). The only question is whether counsel's strategic decision was
"reasonable." *See Minton v. Sec'y, Dep't of Corr.*, 271 F. App'x 916, 918 (11th Cir. 2008)
("The Supreme Court has 'declined to articulate specific guidelines for appropriate
attorney conduct and instead has emphasized that the proper measure of attorney
performance remains simply reasonableness under prevailing professional norms.'")
(quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)); *Dingle v. Sec'y, Dep't of Corr.*, 480
F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . . appears to have been
unwise in retrospect, the decision will be held to have been ineffective assistance only
if it was 'so patently unreasonable that no competent attorney would have chosen
it.'"). A defendant's disagreement with counsel's tactics or strategy will not support a
claim of ineffective assistance of counsel.

Even assuming that counsel performed deficiently by not impeaching the victim as he suggests, Lawrenson fails to demonstrate that the suggested impeachment would have resulted in his acquittal.  Absent a showing of prejudice, Lawrenson cannot obtain relief because *Strickland's* requirements remain unsatisfied.  Lawrenson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this claim of ineffective assistance of trial counsel.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Two**

Lawrenson contends that he is a British national and that trial counsel's failure to alert him of his right to contact the British Consulate after his arrest "proves counsel to [have] been legally unprepared" and resulted in a deprivation of both his right to "counsel of choice" and to the effective assistance of counsel.  Lawrenson asserts that "if [he] had or been given the opportunity of gaining 'actual competent counsel,' the failures described within this [application] (in all reasonable probability) would not have occurred.  A true adversarial testing process would have evolved and the result of the proceedings then, in all reasonable probability, would have been colored in a different light."  (Doc. 1, p. 7)  Lawrenson further claims that "the first words of advice the consulate would have offered would have been[,] "Do not talk to anyone without the benefit of counsel," which warning would have caused him to "not have uttered another word to either of the police/detectives until [he] did gain the necessary legal representation."  (Id.)

The state post-conviction court summarily denied this claim in Lawrenson's Rule 3.850 motion as follows (Respondent's Exhibit 13, p. 3) (court's record citations omitted):

> Defendant argues that trial counsel was not properly prepared for the suppression hearing. Trial counsel failed to provide case law that the Defendant had a right to consult with his consulate. . . . As to the consulate issue, Defendant does not have standing to bring this claim as treaties are between countries and not people and individual citizens have no standing to challenge violations of such treaties in the absence of the protest of the sovereign involved. *Maharaj v. State*, 778 So. 2d 944 (Fla. 2000). . . . [This] [c]aim . . . is DENIED.

To the extent that he relies on the facts and legal citations in his Rule 3.850 motion to support his federal application, Lawrenson is entitled to no relief.

In his state post-conviction motion Lawrenson relies on *Osagiede v. United States*, 543 F.3d 399 (7th Cir. 2008),[3] and Article 36 of the Vienna Convention on Consular Relations ("VCCR") to argue a violation of his rights under the Sixth Amendment. The VCCR "addresses communication between an individual and his consular officers when the individual is detained by authorities in a foreign country." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 338 (2006). The VCCR creates no enforceable individual right.

---

[3] The Supreme Court has not decided whether Article 36 creates a right enforceable by an individual in judicial proceedings. *See Medellin v. Texas*, 552 U.S. 491, 506 n.4 (2008) ("[W]e thus assume, without deciding, that Article 36 grants foreign nationals an individually enforceable right to request that their consular officers be notified of their detention, and an accompanying right to be informed by authorities of the availability of consular notification.") (internal quotation marks and citation omitted); *Sanchez–Llamas*, 548 U.S. at 343 ("[W]e find it unnecessary to resolve the question whether the Vienna Convention grants individuals enforceable rights.... [W]e assume, without deciding, that Article 36 does grant ... such rights."); *Breard v. Greene*, 523 U.S. 371, 376 (1998) (stating that the Vienna Convention "arguably confers on an individual the right to consular assistance following arrest"). In *Osegiede* the Seventh Circuit concluded that Article 36 creates individually enforceable rights. 543 F.3d at 409–410. *Osagiede* is not "clearly established federal law, as determined by the Supreme Court," as required under Section 2254(d)(1).

"[T]he Vienna Convention itself disclaims any intent to create individual rights, stating that its purpose 'is not to benefit individuals but to ensure the efficient performance of functions by consular posts.'" *United States v. Duarte-Acero*, 296 F.3d 1277, 1280-81 (11th Cir.) (quoting the preamble to the Vienna Convention), *cert. denied*, 537 U.S. 1038 (2002). *See also Gandara v. Bennett*, 528 F.3d 823, 829 (11th Cir. 2008) ("[T]he announced rule is that the Vienna Convention does not confer enforceable individual rights. . . . That is the law of our circuit."), and *Cardenas v. Stephens*, 820 F.3d 197, 203 (5th Cir. 2016) (footnote omitted) ("The fact that the [United States Supreme] Court has not found an individually enforceable right means that, under § 2254(d)(1), we cannot grant relief, because such a right is not part of clearly established federal law as determined by the Supreme Court.").

Even assuming that counsel performed deficiently by not notifying him that he could contact the British consulate, Lawrenson offers no evidence that (1) the British consulate could have offered any assistance that his trial counsel did not or (2) that if counsel had performed as he suggests, the outcome of the trial would have been different. Lawrenson fails to establish that the state post-conviction court either unreasonably applied *Strickland* or unreasonably determined the facts in denying this ground of ineffective assistance of trial counsel.[4] 28 U.S.C. § 2254(d)(1), (d)(2).

---

[4] In the federal application Lawrenson relies on *United States v. Cronic*, 466 U.S. 648 (1984), to support this ground of ineffective assistance of counsel. (Doc. 1, p. 7) *Cronic* holds that *Strickland's* prejudice requirement is inapplicable if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." 466 U.S. at 659. Lawrenson fails to explain how *Cronic* applies to his ground of ineffective assistance of counsel. The record shows that trial counsel exposed the

(continued...)

**Ground Three**

Lawrenson contends that his trial counsel rendered ineffective assistance by not presenting either a factual basis or a legal basis to the state court to suppress both Lawrenson's allegedly involuntary statements to the police and an audio recording of a controlled telephone call from the victim to Lawrenson. He argues that "[t]he basis [he] would have argued at the [s]uppression [h]earing was that 'coercion and [p]romises' were made to gain [his] words — a legally viable claim worthy of belief." (Doc. 1, p. 8) Lawrenson asserts that counsel's "bare bones" suppression argument "failed to demonstrate to the court that the spirit of *Miranda* was defeated and this defeat led directly to trial testimony that was not only material but led directly to [his] conviction." (Id.)

Lawrenson did not argue in the state post-conviction court that his *Miranda* waiver was induced by coercion. Lawrenson avers in his federal application that he exhausted this ground by presentation to the state post-conviction court in his Rule 3.850 motion. (Doc. 1, p. 9) The record shows that in the second ground of his Rule 3.850 motion, Lawrenson challenged trial counsel's performance at the suppression hearing based on counsel's failure to argue, *inter alia*,[5] an alleged error in the date of

---

[4](...continued)
prosecution's case to meaningful adversarial testing. Consequently, *Cronic's* presumption of prejudice is inapplicable. *See Bell v. Cone*, 535 U.S. 685, 697 (2002) (emphasizing that *Cronic's* presumption of prejudice applies only when counsel "entirely fails" to meaningfully test the prosecution's case).

[5] Ground two of the Rule 3.850 motion also includes the claim of ineffective assistance of counsel for failing to contact the British consulate discussed in ground two of this order.

the offense stated in the amended information. (Respondent's Exhibit 12,

pp. 11–19) In the third ground of his Rule 3.850 motion Lawrenson argued that his

trial counsel rendered ineffective assistance by not filing an interlocutory appeal of the

denial of his motion to suppress. To the extent that Lawrenson relies on the

allegations in his Rule 3.850 motion and asserts in ground three of his federal

application the same allegations addressed by the state post-conviction court, he

cannot obtain relief.

The state post-conviction court summarily denied grounds two and three of

Lawrenson's Rule 3.850 motion as follows (Respondent's Exhibit 13, p. 3) (court's

record citation omitted):

> In claim 2, Defendant argues that trial counsel was not properly
> prepared for the suppression hearing. . . . Trial counsel also failed
> to point out that the Defendant was not told he had the right to
> an attorney during questioning. Defendant also believes that the
> confession should be stricken because the officers referenced the
> wrong offense date. . . . The Court . . . finds that the Defendant
> was advised that he had the right to an attorney during
> questioning. The confession should not be stricken even if the
> wrong offense date was used. During the questioning, Defendant
> corroborated the victim's story that he stuck his finger into her
> vagina. Specific dates were not really discussed during the
> questioning. Also, there was testimony at trial that the mother
> kept a diary with dates and events. That is likely why the offense
> date was changed. . . . Claim 2 is DENIED.

> In claim 3, Defendant argues that trial counsel was ineffective for
> failing to pursue an interlocutory appeal of the order denying the
> motion to suppress. Such an appeal is not permitted. Only the
> State may appeal an order granting a motion to suppress before
> the case has become final. Additionally, the Second District
> Court of Appeal reviewed the order denying the motion to
> suppress on direct appeal. The Second DCA *per curiam* affirmed.
> Claim 3 is DENIED.

Lawrenson presents no evidence demonstrating either deficient performance by trial counsel nor resulting prejudice under *Strickland* based on the allegations of ineffective assistance of counsel raised in grounds two and three of the Rule 3.850 motion. To the extent that Lawrenson alleges that his trial counsel "simply failed to offer [a] factual/legal basis that would have allowed or led the court to grant the motion to suppress," he is not entitled to relief because the transcript of the suppression hearing shows that counsel challenged the validity of the *Miranda* waiver and argued against the admission of Lawrenson's statements to the police, citing state law cases. (Respondent's Exhibit 4, pp. 90–97) Lawrenson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts in rejecting these allegations of ineffective assistance of trial counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Four**

Lawrenson contends that his trial counsel rendered ineffective assistance by advising him to decline a favorable plea offer. Lawrenson alleges that the state offered him a ten-year plea offer before trial but that his trial counsel "both improperly and prejudicially urged [him] to turn down this [p]lea based wholly upon [counsel] informing [him] that [counsel] was going to destroy [the victim] when she took the stand." (Doc. 1, p. 10) Lawrenson asserts that his trial counsel should have advised him that he "could very well lose at trial and, if you lose, you will receive a life

sentence and die in prison." (Id.) Lawrenson claims that absent counsel's alleged

error, he would have accepted the plea offer and received a shorter sentence.

Lawrenson raised this ground in two parts in his Rule 3.850 motion as follows

(Respondent's Exhibit 12, pp. 23–25) (emphasis in original):

> <u>Ground 4</u>
>
> Given . . . that my counsel's undeniable ineffectiveness stemmed
> directly from his ill–preparedness, my counsel in knowing he was
> ill–prepared to properly argue my cause at trial, should have
> properly conveyed the following:
>
> **PART ONE**: A Best Interest Plea of *noll[e] contendere* with a
> preservation of the right to appeal the denial of the Motion to
> Suppress.
>
> It is a matter of record that on the day of trial my counsel
> informed me that the State had offered a favorable ten (10) year
> plea. Counsel urged me to turn down this plea stating that he was
> going to destroy [the victim] when she took the stand — both
> implying and leading me to believe that we would win at trial.
>
> 1) The foregoing clearly demonstrates that my counsel barely
> talked to/questioned [the victim] and did not destroy her
> testimony.
>
> 2) Counsel failed to tell me that all of the others who were going
> to testify at trial were each going to put before the jury testimony
> that collectively would lead credence to the pointing of a guilty
> finger.
>
> 3) What counsel should have done is explained the whole of the
> above to me while telling me that I could take a Best Interest Plea
> explaining that you can plead without actually admitting guilt
> while preserving the right to appeal the suppression hearing
> denial and if that appeal is successful, then we are returned to
> court but now the State's case in [c]hief will be without 70% to
> 80% of their previously expected witness testimony, videos, and
> recordings.
>
> Put simply, [i]f my counsel would have told me all of the above I
> would have in fact offered a *noll[e] contendere* plea to the court in

exchange for the State's 10 year offer while preserving my right to appeal the denial of the Motion to Suppress and if so done, I would have received a lesser sentence than that that was ultimately received through my [t]rial conviction.

**PART TWO**: Counsel's improper offer of affirmative misadvice leads to a longer sentence

To stave off repetitiveness, all arguments and/or claims set out in the foregoing "Part One" are each applicable and are incorporated by reference into this "Part Two[.]" [T]he Defendant however points to and puts particular emphasis on paragraph #2 of part # one.

It is a matter of record that on the day of trial my counsel informed me that the State had offered a favorable ten (10) year [p]lea. Counsel urged me to turn down this plea stating that he was going to destroy [the victim] when she took the stand, both implying and leading me to believe that we would win at trial.

I, William Lawrenson, state for the record that but for counsel's affirmative misadvice when conveying the State's favorable ten (10) year plea offer that I would have accepted this plea and if so done, I would have received a lesser sentence than that that was ultimately received through my trial conviction. Therein the prejudice lies.

The state post-conviction court characterized these allegations as follows (Respondent's Exhibit 13, p. 4):

In claim 4 Defendant writes that trial counsel misadvised him about the plea offer. Defendant claims that counsel advised Defendant to reject a ten year offer because counsel would destroy the victim on the stand. Defendant also argues that trial counsel failed to discuss the testimony of the other witnesses and explain how they would tend to show the Defendant's guilt. As the record does not conclusively refute the Defendant's claim, a response from the State is warranted.

The state responded that Lawrenson failed to "allege a specific deficiency on the part of [t]rial [c]ounsel as required." (Respondent's Exhibit 14 , p. 4) The state further asserted that Lawrenson was entitled to neither an evidentiary hearing nor the

opportunity to amend his ineffective assistance of counsel claim because "his claim cannot be made sufficient." (Id. at p. 5) The state post-conviction court agreed with the state and denied relief. (Respondent's Exhibit 15) Lawrenson appealed. The state appellate court reversed the denial of this claim of ineffective assistance of counsel and remanded the case to the trial court to afford Lawrenson the opportunity to amend his post-conviction motion. (Respondent's Exhibit 17) *See also Lawrenson v. State*, 143 So. 3d 1048 (Fla. 2d DCA 2014). Lawrenson filed an amended Rule 3.850 motion in which he claimed that "[i]mmediately prior to the start of [t]rial [the prosecutor] entered into last minute plea negotiations with [counsel]." (Respondent's Exhibit 20, p. 4) Lawrenson alleged that if his counsel had given him "all necessary information" about the prosecutor's ten-year plea offer, he would have accepted the offer and received a sentence significantly less than the life sentence he received after conviction at trial. (Id. at p. 6) Lawrenson requested an evidentiary hearing on this ground in the state post-conviction court. (Id. at p. 8) The state post-conviction court summarily denied the amended Rule 3.850 as follows (Respondent's Exhibit 21, pp. 1–2) (emphasis in original):

> Defendant claims trial counsel was ineffective for affirmatively misadvising him to reject a plea offer of 10 years offered by the State on the eve of trial. The Defendant claims trial counsel stated he "was going to destroy [the victim] when she took the stand." defendant states that trial counsel failed to properly investigate all the facts of the case and "the cumulative effect that this testimony would have upon the collective thought process of the jury."
>
> As provided in *Schofield v. State*, 681 So. 2d 736, 737–38 (Fla. 2d DCA 1996), *remanded on other grounds*, 861 So. 2d 1244 (Fla. 2d DCA 2003):

Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), ineffective assistance of counsel claims have two components. A defendant must show: (1) that his attorney made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) that but for the errors, the result of the trial would have been different. . . . A defendant bears the burden of establishing both prongs of the *Strickland* test before a criminal conviction will be vacated.

Defendant's claim is essentially the same as previously stated when found to be insufficient, with the addition of a vague allegation of trial counsel's "ill-preparedness to actually argue my cause at trial." The Defendant's claim still only provides general conclusions about his disappointment in trial counsel's cross–examination of the victim. The Defendant does not allege a specific deficiency as to *how* counsel was ineffective for failing to impeach the victim. The mere fact that the Defendant was ultimately convicted does not plead a sufficient allegation beyond a mere conclusory statement.

The Defendant's addition of an even more vague allegation that trial counsel was ineffective for also failing to argue at trial, or account for the testimony of every other witness, does not cure the deficiency in his original claim. The Defendant does not provide the content of any testimony, nor does he even provide the names of specific witnesses, for which he claims trial counsel failed to investigate.

Accordingly, and as Defendant has now been provided an opportunity to amend his facially insufficient claim, and has again failed to do so, it is **ORDERED AND ADJUDGED** that Defendant's *Amended Motion for Post Conviction Relief* is **DENIED**.

The state appellate court affirmed the denial of the amended Rule 3.850 motion in a *per curiam* decision without a written opinion. (Respondent's Exhibit 23)

Lawrenson's allegations challenge counsel's alleged advice to reject a plea offer based on counsel's assessment of both the strength of the state's case and counsel's ability to undermine the victim's credibility at trial. "The Supreme Court has long

recognized that *Strickland's* two-part inquiry applies to ineffective assistance of counsel arising in the plea process." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). *McMann v. Richardson*, 397 U.S. 759, 771 (1970), explains that a court should determine not whether "counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." Establishing deficient performance requires proof of more than a strategic predication by counsel that proves wrong. *Lafler v. Cooper*, 566 U.S. 156, 174 (2012) ("[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."). To satisfy *Strickland's* deficient performance requirement, an applicant must establish that counsel committed "gross error." *McMann*, 397 U.S. 772.

Lawrenson does not demonstrate that counsel's advice was either completely unreasonable or bore no relation to a reasonable trial strategy. Lawrenson does not claim that counsel precluded him from accepting the state's offer. Lawrenson's argument invites the sort of hindsight analysis that *Strickland* forbids. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). *See also Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) ("[A]fter the fact testimony concerning [the] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, [the

applicant] would have accepted the plea offer."). Even accepting his allegations that counsel overestimated the strength of his case, such advice constitutes a bad prediction, not gross misadvice amounting to deficient performance. The record demonstrates that counsel's assessment of the case was not unreasonable as the jury acquitted Lawrenson of one charge and found him guilty of a lesser-included offense on another charge. Consequently, Lawrenson has not satisfied *Strickland's* performance prong. *See Minton v. Sec'y, Dep't of Corr.*, 271 F. App'x 916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (alterations omitted)).

Even assuming Lawrenson establishes deficient performance, he fails to demonstrate resulting prejudice. Lawrenson cites *Lafler v. Cooper*, 566 U.S. 156 (2012), to support his ground of ineffective assistance of counsel. (Doc. 1, p. 12) *Lafler*, 566 U.S. at 163–64, explains:

> In contrast to *Hill*, here the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

While the alleged ten-year plea deal offers a lower sentence than the life sentence he received, Lawrenson cannot establish prejudice under *Lafler*. Lawrenson was charged in count one of the information with sexual battery on a person less than twelve, a capital felony that carries a mandatory life sentence under state law. *See* Respondent's Exhibit 6, p. 633. Lawrenson presents no evidence that the trial court could have imposed a ten-year sentence. Because he cannot demonstrate prejudice as described in *Lafler* and *Strickland*, Lawrenson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts in rejecting these allegations of ineffective assistance of trial counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Five**

Lawrenson contends that the cumulative effect of trial counsel's alleged deficiencies deprived him of his constitutional right to the effective assistance of counsel. "Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied*, 469 U.S. 1158 (1985). *See also Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [the applicant] received a fair trial as is [his] due under our Constitution."). Because each of the grounds in Lawrenson's federal application lacks merit, no cumulative prejudice results. *See Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the

claimed prejudicial effect of [counsel's] cumulative errors does not warrant habeas relief."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

Accordingly, Lawrenson's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Lawrenson and close this case.

## DENIAL OF BOTH
## A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS

Lawrenson is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Lawrenson must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues she seeks to raise. See 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Lawrenson is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in*

*forma pauperis* is **DENIED**.  Lawrenson must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on December 26, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE